**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

ADP, INC.,

Plaintiff,

vs.

TODD HUNZEKER CHEVROLET,
OLDS, BUICK, INC., and
TODD HUNZEKER,

Defendants.

CA No. 07-486 S

**AFFIDAVIT OF TODD HUNZEKER IN SUPPORT OF DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE DEFAULT**

STATE OF IDAHO )
: ss.
County of Caribou )

TODD HUNZEKER, being first duly sworn upon oath, deposes and states as follows:

1. That I am the President of Todd Hunzeker Chevrolet, Olds, Buick, Inc. located in Soda Springs, Idaho; that I am a Defendant in the above-captioned matter; and that I make this affidavit upon my own personal knowledge, recollection and belief.

2. My company consists of two automobile sales lots.

3. I have numerous responsibilities in running my lots, which include working all car deals, managing over 40 employees, strategic marketing, financial oversight, and many other tasks.

4. At the beginning of the year in 2006, I entered into contractual negotiations with BZ Results. BZ Results held itself out as a company which specializes in creating car dealer websites and training those car dealerships to use web-based marketing to increase sales and exposure.

5. During my negotiations with BZ Results, they promised to bring a team of people to Soda Springs, Idaho; train my employees on using their products; and provide specific training for my service, parts and sales departments so my stores could become internet driven.

6. The BZ Results' training program was referred to as a "boot camp."

7. I emphasized to BZ Results that the reason I was interested in their products was because I knew nothing about internet-based marketing and wanted enough exposure on the internet so when a potential customer made a web search to buy a vehicle in Idaho, a link to my company's website would appear.

8. At the beginning of April, 2006, BZ Results and I entered into a contract for various products. Under the contract, I was required, among other things, to pay approximately $5,300 per month for 36 months for those services.

9. At about the same time, Mr. Wolfington sold BZ Results to ADP, Inc. After the sale took place, I felt like BZ Results did not pay attention to servicing my contract.

10. I had done everything BZ Results asked me to do to take advantage of BZ Results' products, including hiring a full-time internet manager and providing the internet manager with an office and a computer system. I also changed my company's marketing approach by taking steps to drive customers and potential customers to my company's website. This included adding my company's internet address to advertising and letterhead, as well as holding contests throughout my company's marketing area which gave potential customers the

opportunity to win prizes if they provided me with their e-mail addresses. I did these things at BZ Results' request.

11. Through the entire first year of the contract, I made payments on time in the total amount of approximately $63,000. Despite that fact, I had significant difficulty finding my store's website on the internet when I would do sample searches.

12. I called BZ Results approximately a dozen times during the first year of the contract to complain about these problems. My internet manager also e-mailed BZ Results constantly expressing the same frustrations.

13. In the late spring of 2007, I told BZ Results that if they did not start paying attention to my contract, I would quit paying. I also told them again about the difficulties I was having finding my store on the internet.

14. I eventually quit paying on the contract.

15. I also filed a complaint against BZ Results with the Rhode Island Better Business Bureau in July, 2007.

16. I spoke to Mr. Wolfington, who still worked for BZ Results, after the first year of the contract. He directed me to another BZ Results employee, who told me the problem was I did not have a search engine optimization tool.

17. This employee's statement to me was contrary to the original contract, since I had been assured that through the products I originally purchased, I had everything in place for a successful web-based operation.

18. BZ Results assured me that with the search engine optimization tool, everything would work properly.

19. BZ Results then sent me a second contract and asked me to sign and send it back.

20. I received and read the second contract, and it increased my rates by $1,000 per month.

21. I called BZ Results and told them I would not sign the contract because I did not feel it was right that BZ Results wanted me to pay an additional $1,000 per month for services they had originally agreed to provide.

22. BZ Results and I began to discuss how to part ways and terminate the contract, and these discussions continued through the end of 2007.

23. BZ Results wanted additional money from me, but I felt my previous payments should be returned since BZ Results did not fulfill their contractual obligations and did not provide the "boot camp" training it promised.

24. The most BZ Results had done was send one employee to Soda Springs to talk to my sales department for a couple of hours, but the BZ Results employee provided no real training.

25. On January 8, 2008, I was served with a Summons and Complaint.

26. My company also received, by certified mail, Plaintiff's applications for default on March 1, 2008.

27. During this same time period, I was continuing discussions with BZ Results about settlement and was under the impression that those negotiations would be successful.

28. Because of the negotiations, I believed BZ Results would not continue to pursue the lawsuit against me.

29. I continued to operate my company, supervise employees, and carry out all of the duties for which I have responsibility. Also during this same time period, I was dealing with a family member who had an illness. The illness required specialized treatment in Arizona from January, 2008 through late spring.

30. When I received the request for default judgment in early June, 2008, I called my attorney and asked for representation, because I then realized that BZ Results was continuing to pursue the lawsuit against me, that settlement negotiations were not going to be successful, and that I needed to protect my interests.

31. The reason I did not appreciate that BZ Results was pursuing the lawsuit prior to that time was because I felt there was no way BZ Results, in good conscience, would appear before a court and ask for additional payment when I had already paid well over $60,000 and received virtually nothing in return. I was not able to locate my own store on the internet, and my employees were not properly trained.

32. BZ Results failed to fulfill their obligations to me under the contract.

DATED this 27 day of June, 2008.

TODD HUNZEKER, President
Todd Hunzeker Chevrolet, Olds, Buick, Inc.

SUBSCRIBED AND SWORN TO before me this 27 day of June, 2008.

KAYE SUMMERS NOTARY PUBLIC STATE OF IDAHO

Kaye Summers
Notary Public for Idaho
Residing at: Soda Springs.
My Commission Expires: 6/23/09

**CERTIFICATION**

I hereby certify that on this ___ day of June, 2008, a true copy of the foregoing was e-mailed via ECF to Robin L. Main, Esq. and Jeffrey A. Mega, Esq., Hinckley Allen & Snyder, LLP, 50 Kennedy Plaza, Suite 1500, Providence, RI 02903.

/s/ Steven J. De Luca